All right, I was just checking. Okay, so this matter will be submitted. Thank you, everyone. Thank you. All right, the next matter on calendar, the last matter on calendar for today is LNS Enterprises LLC v. Continental Motors. And my understanding on this case is on the appellee's side, Lori Salida will take eight minutes, and Tracy Hugh Fowler will take seven minutes. Am I correct on that? That's what we've decided, Your Honor. Yes, thank you. Okay, thank you. All right, so each side has 15 minutes total. We're ready. Thank you. Good morning, Your Honors and distinguished counsel. May it please the Court, my name is Brian Lawler. I represent the plaintiffs and appellants in this matter. The case before us today is essentially a matter of first impression for the Ninth Circuit since the seminal Supreme Court opinion in the Ford Motor Company case in when applying to an aerospace company, can a global aerospace company that markets its products and services in all 50 states and internationally be hailed into court in Arizona when one of those products fails, causes an accident in the foreign state of Arizona to Arizona residents? Well, I should tell everyone that I just judged a midcourt at Harvard Law in the finals and Justice Kagan was on the panel and the central issue was Ford, so I'm ready. There's a aviation law conference coming up in January where it's going to be a pretty big matter for the panel. Everyone agrees here that there's no general jurisdiction, correct? Correct, we believe that argument, Your Honor. Okay, so go ahead. So as to specific jurisdiction, the question before the court is whether the Ford opinion is analogous to the case of Barr and secondarily, if the evidence before the court and in the record now is not sufficient to find specific jurisdiction as to Continental Motors and Cessna, excuse me, Textron, was the district court's decision to prohibit jurisdictional discovery in an evidentiary hearing erroneous? We think the answer to that is yes. The record that exists now before Your Honors is made of two declarations, one from a Continental Motors employee, the other from a Textron employee, which we were not allowed to revive. We were not allowed to, well, if we could have submitted affidavits, the question then becomes from whom, but we weren't allowed to propose. I'm asking about Textron because we have to look at both of them separately. Can you respond to Textron's contention that the aircraft in question was designed and manufactured by Columbia, not Cessna or Textron? And then if Textron has no relationship with the company that designed and manufactured the aircraft at issue, how do Textron's contacts with Arizona relate to this suit? It seems to me Textron is more tenuous than Continental. I would agree that they're more tenuous. First of all, those facts are uncontroverted. We don't dispute that the aircraft was manufactured by Columbia, that Columbia no longer exists, that Cessna was subsumed into Textron, and that Textron is the remaining corporate entity. We don't dispute any of those facts. I think the analysis that would go to Continental and that also went to Ford Motor would inure to Textron in the Arizona, in the district court. What are Textron's contacts in Arizona? I mean, I know that the plaintiffs are from Arizona, the accident happened in Arizona, so you get there, but what does Textron do in Arizona? That's what we would like to know based on the testimony from Continental in the Cohen case, which we cited, and we'll discuss a little more detail here shortly. Well, what do you know right now? Right now, what contacts does Textron have? The record shows that they have one service center in Arizona. That's all the record shows right now. What it doesn't show is how many aircraft it services, what manner they advertise and market those services in Arizona, the amount of revenue that they generate from not only that service center, but going back to the Cohen case, if they have, like Continental does, a subscription-based website, not a general website that anyone can just go look at. They're not attached to the aircraft. I mean, and it's true in Ford, but the service centers that we're talking about in Ford were attached to Ford. So just if they have service centers, but they have nothing to do with this particular airport. I don't dispute that they don't have anything to do with this particular aircraft. I'm not sure that's the analysis though. Going to Ford, it's does Textron currently have, do they purposely direct their activities, like on the Axiom case, not talking about purposeful availment, purposeful direction. Do they purposely direct their activities into Arizona such that they can be hailed into court? Now, if we get to the district court and the Arizona successorship and interest laws don't hold Textron liable for the failure of a Columbia aircraft, that's what happens. And that's fine. And we're willing to accept that, but we are not even being afforded the opportunity to see if that's the case. So if Textron is not amenable, not subject to suit in Arizona, how would we know that? Well, I guess, okay, if we take the record as we have it right now, would you agree that there are not sufficient contacts under Ford with regard to Textron? Yes, I would. What about Continental? I don't agree with that. The evidence in the record, which again is Mr. Ward's declaration as to Continental Motors says, and I would invite the court to look at it's Continental's supplemental excerpt of record, pages 14 and 15, and specifically line nine, that Mr. Ward testified that, or declared that Continental Motors did not create a marketing strategy for the subject engine in Arizona or targeted to Arizona residents. That's not the Ford analysis. And then in Continental's response brief, they don't accurately say what Mr. Ward declared. And they say that they have no engine related contacts in Arizona. Well, I would invite the opinion, which we cited as supplemental authority. Mr. Ward testified in a deposition that Continental Motors purposely markets to the general aviation population, all 50 states and internationally through independent distributorships and that subscription-based website service that the North Carolina appellate court found was sufficient to hold Continental Motors subject to jurisdiction there. Those are the same questions we would like to know from Textron. And then if Arizona successorship and interest law shows that no, it's more than just the breach of express warranty as was declared by Ms. Fleming, for which we could potentially have Textron liable. If that's not what Arizona successorship and interest law holds, and that Textron is in fact liable for the failure of a predecessor company's product, we would like to know that and we would like that opportunity. Well, okay. So I know you want to do more discovery. And I think you would agree that a discovery ruling is an abuse of discretion standard. Is that correct? Yes, ma'am, it is. And so we're getting into a little different standard than what we're talking about otherwise. So I know that there were some declarations or affidavits or something stating that what you were trying to do discovery for, they disputed it. They had declarations saying that you were wrong on those points. So what's wrong with the analysis that, because we're not talking about summary judgment or a motion to dismiss now, we're talking abuse of discretion, that the judge looked at it and you said, well, I think if I can prove X, Y, and Z, or I want to ask these questions and they put in responses and the court looked at them and said, well, you're not going to be able to show them. So I'm not going to let this, I'm just not going to let this keep going on. How did the court abuse its discretion? I would submit that at the time, we did not have the benefit of the Cohen versus CMI opinion from North Carolina, which I understand is not binding. But there in that opinion, the court relied on testimony from Mr. Ward, the same gentleman that provided the declaration on which Judge Brnovich relied in the district court, where she said, well, you don't even really know what you're asking for. Well, now we do know what we're asking for because of the facts that the North Carolina appellate court relied on the whole continental subject to jurisdiction. We want to know about how they purposely market into all 50 states, specifically Arizona. Is there a subscription based website by which its distributors conduct business for Continental Motors and Parts, and Textron Motors and Parts too for aircraft for that matter. We know that that's what the North Carolina court relied on. So yes, we did not know what we did not know when the motion to dismiss came out. But we're just sort of hoping they would agree to jurisdiction. Was that the hope in the prayer? Yes, that's always the hope in the prayer. It's not that that's not going to happen. But again, not being part of the opportunity to cross Mr. Ward, and I don't know that we would have had the the information that we now have from North Carolina. But it's undisputed that he averred under oath that they purposefully market to all 50 states internationally, and these other manners in which they generate revenue from the forum state stands to reason if it happened in North Carolina. What actions do you allege Continental has taken to market this specific engines to Arizona customers? And similarly, what actions has Textron taken to market this type of Columbia aircraft in Arizona? I don't and I would like to reserve maybe four minutes, three and a half minutes of my time, but I want to answer your honor's question. Again, I think that analysis is misplaced your honor respectfully. It's not the specific engine, or even that specific engine type, or the Columbia aircraft. It is aircraft for Textron, and engines and component parts for Continental. And I think the Ford case is clear. Yes, they were Ford vehicles. But I don't know that Judge Justice Kagan got so into it. You don't think you have to tie it to the product at all? Not the specific product? No, I don't not not according to the Ford analysis. All right. Well, Ford doesn't say that, though. So do you have a case out there that says that you don't have to have any connection to the product? Because in Ford, there is a connection to the product. I mean, it's a Ford vehicle. It's a Ford vehicle. And yes, it wasn't, it didn't buy it there. But it was a Ford vehicle. Here, you want to do their marketing on things that aren't even Ford vehicles, right? No, absolutely not, your honor. Maybe I misspoke. We want to talk about Continental's marketing for engines. Okay, we can even go to specific engines of this type. It doesn't have to be this particular engine of this type or the same type of engine. Are you talking? Are you saying any engines or? I think it's any I think it's any engines. And I don't think the Ford case I don't think they said specifically Crown Victorias and Explorers. I think it's we read that it's Ford markets in the forum state. They Yes, it was a Okay, unless my colleagues have questions. I'll give you four minutes for rebuttal. I'll because we have taken some of your time. Okay, thank you. Thanks. All right. So we'll go to Miss Salida. Thank you very much. May it please the court. Obviously, we are here today to ask that the court affirm Judge Bonavich's decision below. You want to say who you're I'd like to first address a couple of the points that counsel raised in his argument, and then hopefully have some time to go through a couple of additional points. But first, counsel suggested that Continental's global is a global aerospace company, and that its actions and sales throughout the world should subject it to jurisdiction in Arizona. But our Supreme Court case law concludes that allegations regarding a company's general business activities throughout the world cannot support jurisdiction in a particular forum state. Additionally, counsel, the appellants grouped together multiple defendants in their analysis about aerospace companies doing global sales, and that is not appropriate. In the record before this court, the the appellants have have failed to establish even the first prong of the jurisdictional analysis as it pertains to Continental Motors. There is not a single piece of evidence in the record to establish that Continental intentionally directed activities into the forum state that it were likely to cause injury there. And in fact, Continental provided a record that the plaintiffs did not attempt to rebut establishing an absence of those contacts. Continental is one of multiple distinguished board. I think my understanding is in part on the ground that the case did not deal a component part manufacturer like Continental. Is there a different test that applies to component manufacturers? And if so, what's your best authority for that? Your Honor, I agree that the Supreme Court in the Ford case did not address specifically component part manufacturers. But the argument that we are trying to make is effectively in the Ford case, Ford pervasively exploited the market in the forum states for its vehicle. It targeted those markets for the vehicle in all respects. I think the court used the terms a verifiable truckload of contacts and a company like Continental that would be supplying a component part would not and in fact did not target the end user of that product like Ford would for its fully assembled vehicle. I just want to make sure I understand the point you're making. I'm not trying to put words in your mouth, but I just want to make sure I'm appreciating what you're saying. I think what you're saying is there's just something innately different about a component part manufacturer than essentially the seller of a final good that may not be determinative, but it's at least relevant when you're doing the Ford analysis. Is that what you're saying? Well, at least as it pertains to this case under these facts, yes. I don't know that I'm advocating for a general rule for every case, but under these facts, that is correct. We are completely distinguished from the Ford case here. The Ford case focused really on the second prong of the analysis, whether the underlying causes of action arose from or related to Ford's contacts within the forum. We don't even get to Ford in our case here. We do not concede a purposeful direction like Ford did in the Ford case. There is not sufficient evidence that Continental targeted its activities towards the forum state. Is there anything in the record that clarifies what Continental's relationship with the four service centers in Arizona is? Are these third party affiliates or does Continental operate these centers? I'm actually glad that you raised that, first. The websites that the appellant cited pertaining to those service centers are not part of the record and were not properly submitted as evidence through their brief. The court is free to disregard that if it so chooses. Secondly, the website that was provided in their brief is a globally accessible, passive website that anybody can log onto and see. The website is basically telling engine owners, hey, if you have an engine, you can go to these service centers and have it taken care of, but they are not affiliated with Continental. There is no evidence that they were affiliated with Continental, and the appellants did specifically not identify any evidence that connected them to Continental, aside from the fact that- I think that's why he wants to do discovery though, too. There could be instances when you're caught with a motion like this, that it's maybe early in the proceedings where the should say, well, if in fact, let's say these were all Continental run service centers, maybe that might give them more contacts, or if they were able to look into it and find out that they're marketing heavily their components or something. Yes, Your Honor, but we already have evidence in this case that the appellants did not and could not refute that Continental has no real estate, no businesses, no office, no distribution centers, no service centers, and is not licensed to conduct business in Arizona. So that question is resolved. The discovery request is a red herring, in my view. First of all, the appellants did not meet their burden to establish that they were entitled to discovery in the lower court. The requests that they submitted were speculative and based on hunches. The law does not allow defendants to be subjected to expensive and burdensome discovery based on speculation and hunches. And in this court, the appellants have not established through clear evidence that they are substantially prejudiced based on the record that Continental submitted. That record is not going to change based on discovery. So based on Mr. Ward's declaration, it's obvious that Continental did not exploit the Arizona market. So even if, for example, there was some evidence of some sales into Arizona, the contacts in Arizona are explicitly lacking as compared to those that the court determined were appropriate in the Ford case. Let me find out if my colleagues have any other questions. Well, is there any evidence in the record that these four service centers are actually independent businesses that just will service Continental engines? Well, yes, Your Honor, we submitted an affidavit stating that we are not licensed to conduct business in Arizona, that we do not have any real estate or offices here, that we do not have any submitted that they could not be Continental owned or operated service centers. And also, as I said, that website is not really part of the record. Okay, thank you. Your time's expired. Thank you. All right, then we'll go over to, I believe, Counsel for Textron. If you would state your name and appearance, then you have seven minutes. Good morning and thank you. My represent Textron Aviation, Inc. And if I refer to it by the shorthand Textron, I'm referring to that entity and not to any other entity with that name. I appreciate the court's time today. I wanted to start by addressing what seems to be an extremely expansive view that Counsel for Plaintiffs is taking of the courts, the US Supreme Court's decision in the Ford cases. If I understand his logic, I think he's trying to tell this court that in the facts of the Ford case, the plaintiffs could have sued General Motors and said General Motors makes cars, General Motors markets cars in Montana and Minnesota, and this was a car accident. So they're subject to jurisdiction here. And then we want to do discovery and figure out if we can imagine some or dream up some connection between Ford and General Motors that would result in General Motors being liable. I guess but given your your contention that Textron has no relationship with Columbia designed and manufactured aircraft, why didn't Textron seek a dismissal under Rule 12b-6 on that ground? Why rely on the jurisdictional argument? Well, I think they're certainly entitled to dismissal on under 12b-6. They chose not to litigate in a forum where they're not subject to personal jurisdiction and they have business reasons for making that kind of a decision, Your Honor. So we are the relief we asked for and got from the court was to dismiss for lack of personal jurisdiction before even getting to the merits. But there are no merits even to reach as the court is noting. So I think the ultimate result of this is going to be a dismissal one way or the other. But does Textron sell any Columbia branded aircraft services or parts in Arizona? No, it does not. Well, and I think your declaration states that Textron did not serve as the plaintiff's aircraft. Is there any evidence in the record regarding whether Textron's repair center in Arizona services Columbia aircraft generally? The website describes the brands of... I can't hear you too well. Can you start again there? Yes, I'm sorry, Your Honor. The website describes by brand names the aircraft that it offers service for and Columbia is not one of them. It actually services jet and turboprop aircraft and not piston aircraft like this one. So Columbia aircraft in general are not serviced at that facility and the subject aircraft was never taken to that facility as far as our records suggest. So it has no connection to the subject aircraft. So if we think about this case from the standpoint of Ford again, the presence of the subject product in the state of Arizona, unlike Ford, is not a case related contact that would connect Textron Aviation to Arizona because it has no connection to that product at all. It never has. To go beyond that, Your Honor, and consider the purposeful direction of activities, again, this is not analogous to Ford at all. Textron Aviation, the business it conducts and engages in happens in Kansas, the state of Kansas. That's where it's incorporated. That's where its principal place of business is. That's where it designs and manufactures general aviation aircraft and that's where it creates and produces supporting literature like manuals and publications that relate to it. That all happens in Kansas. None of that happens in Arizona. It also does not have distributorships or dealerships like Ford had in Montana and Minnesota. What about the marketing? Right, they don't engage in any marketing or advertising that is specifically targeting Arizona in any way. Ford, it was pointed out in the Ford case, has billboards and television advertising and saturates the public media with references to its vehicles to cultivate a market there. There's no evidence that Textron simply doesn't do any of those things in Arizona and there's no evidence to the contrary. So it's not engaged in the kind of cultivation of a market in Arizona specifically targeted to Arizona that would create an analogy to the Ford situation, to the facts of the Ford case. It has a service center that does not engage in the design or manufacture of any aircraft or any marketing or advertising activities. So it simply provides service to existing customers of certain aircraft, not including the Columbia that's at issue here. So I don't think any of the facts, sorry. I think Judge Brass has a question for you. Is it your client's view that it can basically only be sued in Kansas? And I can't recall if it's incorporated in Kansas or Delaware, but in the principal place of business in the state of incorporation, just given the nature of its business? It is incorporated in Kansas and that is where its principal place of business is. So it of course can be sued under general jurisdiction principles there. Ford doesn't let you just limit yourself to your place of the home. Ford says more than that. So Judge Brass is saying, can you only be sued at home? Is that what you think? Well, if a plaintiff has a point in specific jurisdiction, it would have to establish minimum contacts with a state other than Kansas. And if it did, then of course, Textron could be sued in that other state. I'm simply suggesting there are no such contacts as it relates to Arizona here to justify the imposition. But I guess what I'm saying is, given the nature of your client's business, is it likely that you'd be subject to specific jurisdiction anywhere on your view? Well, imagine hypothetically, if a plaintiff claimed that there was a service center that was negligent in some way and caused a problem to one of its aircraft, I presume a suit could be brought in Arizona for an activity there for a claim that related specifically to that activity. But it's not subject to a broad range of claims the way Ford is under the analysis of the U.S. Supreme Court because it doesn't engage in those kinds of activities. I want to take just a quick moment and point out the court's ruling as it relates to jurisdictional discovery. It should be clear that the plaintiff did not submit any affidavit or any explanation to the court as to what it thought it could accomplish by engaging in jurisdictional discovery. The trial court's ruling says this, plaintiffs request permission to conduct discovery as to each defendant without providing any affidavit or evidence, substantiating their request or describing with any precision how such discovery would be helpful to the court. The court goes on to characterize it as just a hunch that maybe they can find some grounds for personal jurisdiction. That is clearly not an adequate showing and the trial court did not abuse its discretion in denying that. I think my time's up, but if there are any questions. I don't appear to have any additional questions by my colleagues, so we'll go back for the rebuttal. Thank you, your honor. What counsel has for Continental and Textron has just said is the exact same thing that Continental said in the Cohen case in North Carolina. They, Mr. Ward submitted a declaration that said the exact same things or very similar things. We don't have property there, we don't need employees there, we don't purposely do business there, it's a general purpose website. The North Carolina court rejected that after Mr. Ward was deposed and admitted they their activities to all 50 states. So it's unreasonable to suggest that there's testimony out there that Mr. Ward said Continental targets all 50 states, that includes Arizona. So we think we're entitled to find out what are those activities. And Textron- Why didn't you submit anything to the district court? Obviously faulted you and said, hey, you didn't, you've got the burden here and you didn't do anything. That information wasn't available. And they submitted affidavits. Right. And again, I would invite the court, like from whom are we going to get affidavits? They get their employees. We can't go get a Continental employee or a Textron employee or former employee to submit an affidavit. It's like an offer of proof. I mean, it's saying this is what I would establish. This is how I would do it. And this is the means I need. And you didn't even do that, right? That's correct, your honor. Because again, I go back to we didn't know what we didn't know. The North Carolina opinion came down in September, just two months ago, and when we saw that and that Mr. Ward testified under oath that they do these things. And we're not talking about a general website where people- There's some things you don't know, but there are other things. I mean, Ford emphasizes that this has, you know, real limits, I think is the term the court used there. And so there's some things you may not know, but there are other things if someone is, has pervasive and contacts to the level that they're going to rise to a related to and you could point to it to say, we've been able to go online. We've been able to see some things on the website. We're aware of these things. We don't know everything, but yet you should be able to put forward something. And I think that was a district court's concern. Well, and I think your honor, I appreciate that, but I think we did do that. And I understand the district court didn't agree with us. We said, look, we want to know about the volume of sales, the number of aircraft, how do you market into the state? And that was just rejected by the district court. Now we know based on the Cohen case, they do actually do this. And it was the exact same argument proffered by continental and North Carolina that was, was agreed with by the trial court, but then rejected by the appellate court because once testimony came forward and they didn't have to do jurisdictional discovery after the dismissal, they got to do discovery from the, from the get-go. So they, so they knew all this, but the trial court, the trial court there looked at the exact same argument council's making today with respect to their, you know, we don't have property, we don't have employees and rejected it. And that's, you know, that I think is, I think is important. And that just happened two months ago. So when we were faced with this motion to dismiss two years ago, we didn't have the benefit of that information. I certainly think it's telling that Mr. Ward's declaration in this case is not even close to what he, what he testified to in his deposition in the Cohen case. And that's what carried the day with the appellate court. He, you know, he said, look, we, yeah, we do, we do all these things and it has to do with independent distributorships and the subscription-based website. And I think between those two scenarios, that certainly warrants us being allowed to look into, into that information further to decide if Continental and Textron do in fact avail themselves. Textron is a regional sales, regional aircraft sales office in Tucson, Arizona. So to say that they don't sell aircraft in Arizona is not particularly generous. That's not evidence before the court, but that's a true statement. So it would be things like that. How many did they sell? And that I think is information to whether both Textron and Continental Motors should be hailed into court in Arizona. My time is up, your honors. I appreciate the opportunity. All right. Thank you everyone for your helpful comments. And this will conclude our calendar. This matter is submitted. We'll be in recess till tomorrow at 9 a.m. All rise.
judges: Gilman, CALLAHAN, BRESS